JS-6

1
2
3
4
5
6
7
8

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ORANGE COUNTY COASTKEEPER, a California non-profit corporation,<br><br>         Plaintiff,<br>    vs.<br><br>WARE DISPOSAL INC., a California corporation; BJW PROPERTIES, LLC, a California limited liability company<br><br>         Defendants. | Civil Case No. 8:20-cv-1565-FLA (ADSx)<br><br>**CONSENT DECREE** |

## CONSENT DECREE

The following Consent Decree is entered into by and between Plaintiff Orange County Coastkeeper ("Plaintiff" or "Coastkeeper"), and Defendants Ware Disposal, Inc. and BJW Properties, LLC (together, "Defendants" or "Ware"). The entities entering into this Consent Decree are each an individual "Settling Party" and collectively the "Settling Parties."

**WHEREAS**, Orange County Coastkeeper is a non-profit public benefit corporation dedicated to the preservation, protection, and restoration of the environment, the wildlife and the natural resources of all waters of California, including the San Gabriel River and its tributaries;

**WHEREAS**, Ware operates a truck/bin maintenance facility at 1451 Manhattan Ave., Fullerton, California 92831 (the "Facility") in support of its business operations, which include the collection of municipal waste from private and public entities;

**WHEREAS**, the Standard Industrial Classification ("SIC") code applicable to the Facility is 4212 (Local Trucking Without Storage);

**WHEREAS**, Coastkeeper alleges that BJW Properties LLC, is the owner and Ware Disposal Inc. is an operator of the Facility;

**WHEREAS**, discharges from the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board] Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ, as amended by Order No. 2014-0057-DWQ, as amended by Order No. 2015-0122-DWQ (collectively, as amended, and as may be amended from time to time, the "Storm Water Permit"), issued pursuant to Section 402 of the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* (the "Clean Water Act" or the "CWA") and;

**WHEREAS**, on June 11, 2020, Coastkeeper issued a 60-day notice letter (the "Notice Letter") to Defendants alleging violations of the Storm Water Permit and the Clean Water Act at the Facility;

**WHEREAS**, on August 21, 2020, Coastkeeper filed a complaint against Defendants

(the "Complaint") in the United States District Court, Central District of California (Civil Case No. 8:20-cv-1565) (the "Action");

**WHEREAS**, Coastkeeper alleges Defendants are violating the substantive and procedural requirements of the Storm Water Permit and the Clean Water Act;

**WHEREAS**, Ware denies all allegations in the Notice Letter and the Complaint;

**WHEREAS**, the Settling Parties have agreed that it is in their mutual interest to enter into a Consent Decree in this Action setting forth terms and conditions appropriate to resolving the allegations set forth in the Notice Letter and the Complaint without further proceedings;

**WHEREAS**, the Settling Parties agree that all references to Defendants' future compliance with the "Storm Water Permit" shall refer to the then-effective version of the Storm Water Permit.

**WHEREAS**, the Settling Parties agree that each and every WHEREAS clause above is a material part of the Consent Decree.

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1.     The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the Clean Water Act, 33 U.S.C. § 1365(a)(1)(A).

2.     Venue is appropriate in the Central District pursuant to Section 505(c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the Facility is located within this District.

3.     The Complaint states claims upon which relief may be granted pursuant to Section 505 of the Clean Water Act, 33 U.S.C. § 1365.

4.     Plaintiff has standing to bring this action.

5.     The Court shall retain jurisdiction over this matter for purposes of enforcing the terms of this Consent Decree for the life of the Consent Decree, or as long thereafter as is necessary for the Court to resolve any motion to enforce this Consent Decree.

**I.      AGENCY REVIEW AND TERM OF CONSENT DECREE**

6.      Plaintiff shall submit this Consent Decree to the United States Department of Justice and the Environmental Protection Agency (collectively, the "Federal Agencies") within three (3) business days of the Effective Date for agency review consistent with 40 C.F.R. § 135.5. The Federal Agencies' review period expires forty-five (45) days after receipt of this Consent Decree by the Federal Agencies, as evidenced by the return receipts, copies of which shall be provided by Coastkeeper to Defendants upon request.  In the event that the Federal Agencies comment negatively on or object to entry of this Consent Decree, the Settling Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies within a reasonable amount of time.

7.      The term "Effective Date" as used in this Consent Decree shall mean the day that this Consent Decree is fully executed by the Settling Parties.

8.      This Consent Decree shall terminate on the later of the following events: (i) three (3) years from the Effective Date; or (ii) if an Action Plan (as defined in this agreement) is required per paragraph 19 below during the 2023-2024 reporting year[1], on January 31, 2025; or (iii) if there is an ongoing, unresolved dispute regarding Ware's compliance with this Consent Decree, within fifteen (15) days of notice by the Settling Parties that the dispute has been fully resolved.

**II.     COMMITMENTS OF THE SETTLING PARTIES**

**A.      Storm Water Pollution Control Best Management Practices**

9.      In addition to maintaining the current Best Management Practices ("BMPs") at the Facility, Ware shall develop and implement the BMPs identified herein, as well as any other BMPs necessary to comply with the provisions of this Consent Decree and the Storm Water Permit. Specifically, Ware shall develop and implement BMPs to prevent and/or to reduce contamination in storm water discharged from the Facility consistent with use of the Best Available Technology Economically Achievable ("BAT") and the Best

---

[1] Reporting year is from July 1-June 30.

Conventional Treatment Technology ("BCT") and/or in compliance with water quality standards ("WQS").

10.  <u>BMPs</u>. No later than September 1, 2021, Ware shall develop and fully implement the following BMPs at the Facility:

    10.1.    Installation of a rain gauge at the site capable of measuring and recording rainfall from at least 0.1 inches at the facility.

    10.2.    Installation of an infiltration gallery designed to capture and infiltrate at a minimum, all runoff from Ware resulting from a 10-year/24-hour storm event.

    10.3.    To contain storm water on-site, permanent curbing will be installed along the entire northern property line and along the portion of southern property line not already contained by the adjacent building.  The existing block wall along the western property line prevents runoff to the west and Ware will inspect the perimeter curbing and this western wall during rain events and document such inspection with video recordings to confirm there is no offsite runoff.  If runoff is observed, additional curbing will be installed to prevent runoff from discharging offsite. A map of the curbing will be included in the SWPPP.

    10.4.    A sump will be installed in the drainage area north of the administration building.  Following rain events, a pump will be used to convey runoff into the drainage area west of the administrative building that flows to the infiltration basin. No more than forty-eight (48) hours following the cessation of a rain event, standing water will be pumped to the infiltration basin.  The persons or position responsible for pumping standing water will be identified in the SWPPP.

    10.5.    All inactive vehicles will be inspected on a daily basis and drip pans will be deployed below any vehicles observed to be leaking fluids.

    10.6.    Trash truck parking areas will be inspected on a daily basis and drip

1    pans will be deployed below trucks observed to be leaking.

2    10.7.   All exposed areas of industrial activity will be inspected on a daily basis

3           for indications of spilled or leaked fluids.  Identified spills or leaks shall

4           be promptly removed by excavation or by using absorbent material.

5           The excavated soil and/or absorbent material will be placed in drums

6           and managed according to applicable regulations.

7    10.8.   All painting and oil changes shall be conducted under cover without

8           exposure to storm water.  Daily inspections will be conducted in

9           exposed areas where bin repair or vehicle maintenance occurs.

10          Identified spills, leaks or repair-related residues shall be promptly

11          removed by excavation or by using absorbent material. The excavated

12          soil, absorbent material, or residue will be placed in drums and

13          managed according to applicable regulations.

14   10.9.   Ware shall implement a weekly site sweeping or vacuuming program

15          covering the paved exterior areas of the facility.

16   10.10.  Ware shall provide Coastkeeper written documentation demonstrating

17          that the required BMPs have been implemented in compliance with this

18          section within fifteen (15) days of completion.

19   **B.   Storm Water Sampling**

20   11.   <u>Sampling</u>. The following storm water monitoring procedures shall be

21   implemented at the Facility:

22   11.1.   <u>Frequency</u>. During the life of this Consent Decree and thereafter in

23          compliance with the Storm Water Permit, Ware shall collect samples

24          from at least four (4) storm water discharges per reporting year from

25          each of the discharge locations at the Facility provided that at least four

26          (4) Qualified Storm Events, as defined in the Storm Water Permit

27          ("QSEs") occur during the applicable reporting year. QSEs, as defined

28          in the Storm Water Permit, are precipitation events that produce a

1    discharge from at least one (1) drainage area and are preceded by forty-

2    eight (48) hours with no discharge from any drainage area.

3    11.2.    Documentation. To document the storm water discharge and discharge

4    location, the person who collects a storm water sample at the Facility

5    will take photographs of the storm water discharge and discharge

6    location when the sample is collected.

7    11.3.    Parameters. All samples collected pursuant to this section shall be

8    analyzed for the parameters listed in Table 1.

9    11.4.    Lab. A laboratory accredited by the State of California shall analyze all

10    samples collected pursuant to this Consent Decree.

11    11.5.    Detection Limits. The laboratory shall use analytical methods adequate

12    to detect the individual parameters at or below the values specified in

13    Table 1.

14    11.6.    Holding Time. All samples collected from the Facility shall be

15    delivered to the laboratory and analyzed within the holding times

16    required in 40 CFR Part 136.

17    11.7.    Results. Ware shall request that sample-analysis results and associated

18    chain of custody forms be reported to them within fourteen (14)

19    business days of laboratory receipt of the sample.

20    11.8.    Reporting. Ware shall provide the complete lab results and photographs

21    of all samples collected at the Facility to Coastkeeper within five (5)

22    business days of receipt during the life of this Consent Decree.

23    12.    Rain Gauge Data. In addition to the reporting requirements of paragraph 26

24    below, Defendants shall provide the rain gauge data records described in paragraph 10.1 to

25    Coastkeeper along with lab results submitted to Coastkeeper pursuant to paragraph 11.7.

26    **C.**    **Visual Observations**

27    13.    Rain Event Visual Observations. During the life of the Consent Decree,

28    Defendant shall visually monitor the effectiveness of the BMPs during at least six (6) rain

events, and record observations with the use of photographs and video footage of the perimeter of the facility. Defendant shall send all photographs and videos to Coastkeeper within five (5) business days of each visual monitoring event.

14.    <u>Non-Storm Water Discharge Observations</u>. During the life of this Consent Decree, Ware shall conduct monthly non-storm water visual observations of its BMPs in accordance with Section XI.A. of the Permit.

15.    <u>Visual Observation Records</u>. Ware shall maintain observation records to document compliance with this section and shall provide Coastkeeper with a copy of these records within fourteen (14) business days of receipt of a written request.

**D.    Employee Training**

16.    Within thirty (30) days of the Effective Date, Ware shall develop and implement a training program to ensure: (1) that there are a sufficient number of employees delegated to achieve compliance with the Storm Water Permit and this Consent Decree at the Facility, and (2) that these employees are properly trained to perform the required activities to achieve compliance with the Storm Water Permit and this Consent Decree (the "Training Program"). At a minimum the Training Program shall include:

16.1.    <u>Non-Storm Water Discharges</u>. Employees will be trained on the Storm Water Permit's prohibition of non-storm water discharges, so that employees know what non-storm water discharges are, that non-storm water discharges can result from improper surface washing or dust control methods, and how to detect and prevent non-storm water discharges.

16.2.    <u>The SWPPP and BMPs</u>. Ware shall train all employees on the SWPPP and specifically BMP implementation and/or maintenance, as applicable, to ensure that BMPs are implemented effectively to prevent the exposure of pollutants to storm water, to prevent the discharge of contaminated storm water, and to ensure the proper treatment of storm water at the Facility.

16.3.   <u>Storm Water Sampling and Visual Monitoring</u>. Ware shall designate an adequate number of employees necessary to collect storm water samples from each discharge location at the Facility and conduct visual monitoring as required by this Consent Decree. The training shall include the proper sampling protocols, including chain of custody requirements, to ensure storm water samples are properly collected, stored, and submitted to a certified laboratory.

16.4.   <u>Training Implementation</u>. A private consultant, or a Ware representative who is familiar with the requirements of this Consent Decree and the Storm Water Permit shall implement the Training Program at the Facility. The Training Program shall be conducted in the language of the employee(s) participating in the Training Program. The Training Program shall be repeated annually, or as necessary to ensure that all responsible employees are familiar with the requirements of this Consent Decree and the Storm Water Permit. All new staff will receive this training before assuming responsibilities for compliance with this Consent Decree or the Storm Water Permit.

17.   <u>Training Records</u>. Ware shall maintain training records to document compliance with this section and shall provide Coastkeeper with a copy of these records within fourteen (14) business days of receipt of a written request.

**E.   Reduction of Pollutants in Discharges**

18.   <u>Storm Water Contaminant Reduction</u>. Contaminants in discharges, if any, shall not exceed the limits in Table 1 ("Numeric Limits"), except as provided herein. After September 1, 2021 and for the remainder of the life of this Consent Decree, the exceedance of any two (2) Numeric Limits in Table 1 for storm water samples collected during a reporting year from the Facility shall trigger the action plan requirement of paragraph 19.

**Table 1. Numeric Limits for Storm Water Discharges[2]**

| Parameter | Limit | Source of Limit |
|---|---|---|
| Total Suspended Solids | 100 mg/L | IGP |
| Total Recoverable Copper | 0.027 mg/L | IGP/NEL |
| Total Recoverable Lead | 0.106 mg/L | IGP/NEL |
| Total Recoverable Zinc | 0.158 mg/L | IGP/NEL |
| Oil and Grease | 15 mg/L | IGP |
| Total Recoverable Aluminum | 0.75 mg/L | IGP |
| Total Recoverable Iron | 1.0 mg/L | IGP |
| Chemical Oxygen Demand | 120 mg/L | IGP |
| Biological Oxygen Demand | 30 mg/L | IGP |
| pH | 6.5 – 8.5 S.U. | Basin Plan |
| Coliform, E. Coli | 126 MPN/100ml | Basin Plan |
| Enterococcus | 35 MPN/100ml | Basin Plan |

19.     <u>Action Plan</u>. If the exceedances of the Table 1 Numeric Limits in the storm water samples collected at the Facility in a particular reporting year are more than the number(s) permitted in paragraph 18 above, then Ware shall submit a plan for reducing and/or eliminating the discharge of pollutants designed to achieve the Table 1 Numeric Limits during the next reporting year at the Facility ("Action Plan"). In any year that an Action Plan is required, it shall be submitted by July 1 immediately following the reporting year during which the exceedance occurred.

19.1.     <u>Requirements</u>. Each Action Plan submitted shall include at a minimum: (1) the identification of the contaminant(s) discharged in excess of the Numeric Limit(s), (2) an assessment of the source of each contaminant exceedance, (3) the identification of additional BMPs, including treating stormwater or other appropriate measures, that will be implemented to achieve compliance with the Numeric Limit(s), and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as possible, but in no case later than October 1.

---

[2] Several of the Numeric Limits are hardness dependent. The 2008 EPA Benchmark based limits expressed assume hardness of 101 mg/l CaCO₃. Defendants shall adjust the limit using the methods provided in Appendix J of the 2008 EPA Multi-Sector General Permit based on receiving water sampling hardness data as applicable.

19.2. <u>Action Plan Review</u>. Coastkeeper shall have thirty (30) days upon receipt of Ware's Action Plan to provide Ware with comments. Within fifteen (15) days of Ware's receipt of Coastkeeper's comments on the Action Plan, Ware shall accept and incorporate Coastkeeper's comments of recommended BMPs into the Action Plan, or shall provide Coastkeeper with a written explanation of the reason(s) for not developing and/or implementing one or more of Coastkeeper's recommended BMPs. Disputes regarding Coastkeeper's comments or the adequacy of a particular BMP shall not impact the schedule for implementing any other BMP set forth in the Action Plan. Any disputes as to the adequacy of the Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section III below.

20.   When an Action Plan is completed, Ware shall revise its SWPPP within thirty (30) days of completion of the Action Plan to reflect the changes required by the Action Plan. Ware shall notify Coastkeeper when the Action Plan has been completely implemented and shall submit the revised SWPPP to Coastkeeper for review and comment as set out in paragraphs 22-23 below.  Disagreements as to the revised SWPPP shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section III below.

**F.    Storm Water Pollution Prevention Plan**

21.   <u>SWPPP</u>. As soon as possible, but no later than September 1, 2021, Ware shall revise the SWPPP for the Facility to incorporate the requirements of the Storm Water Permit and this Consent Decree, including but not limited to the following:

21.1.   Identifying the individual(s) responsible for compliance with the Storm Water Permit and this Consent Decree including specifying which individual is responsible for what area of compliance (e.g., John Doe: collecting storm water samples);

21.2.    Revising the facility site map and site description to include all features required in the Storm Water Permit and to reflect all areas associated with ongoing industrial activities including bin storage, cleaning, and maintenance; vehicle and equipment cleaning operations; vehicle and equipment refueling; vehicle and equipment maintenance; vehicle and equipment painting; storage of materials associated with equipment and vehicle maintenance; and storage of vehicles and equipment, and the requirements of this Consent Decree;

21.3.    Revising the facility site map and site description to identify discharge locations, if any and indicate flow direction;

21.4.    Revising the pollutant source assessment to include all identified pollutants within the impaired watershed including, but not limited to, Coliform, E.Coli and Enterococcus and all other Table 1 pollutants;

21.5.    Revising the monitoring plan to address all pollutants identified in the pollutant source assessment;

21.6.    Revising the list of significant materials description to include the identification of the location where the material is being stored, received, shipped, and handled, as well as its quantity;

21.7.    Remove all erroneous references to sanitary sewer connection(s);

21.8.    Creation of a visual inspection form that must be used by trained facility personnel when conducting the visual observations and monitoring of storm water required under the Storm Water Permit and/or under this Consent Decree;

21.9.    Include the Storm Water Permit's sampling and monitoring requirements including but not limited to the facility's sample locations; and

21.10.   Include sample analysis for all applicable pollutants including at those listed in Table 1.

22.    <u>Revising the SWPPP</u>. Ware shall revise the Facility SWPPP whenever necessary in accordance with the terms of the Storm Water Permit, including, but not limited to, if there are any changes in the Facility's storm water discharge point(s) or changes or additions to the BMPs at the Facility whether made pursuant to an Action Plan or not, within thirty (30) days of the occurrence of any of the above-listed events.

23.    <u>Commenting on Revised SWPPPs</u>. Ware shall submit each revised SWPPP to Coastkeeper for review and comment within ten (10) days of its completion. Coastkeeper shall provide comments, if any, to Ware within thirty (30) days of receipt of the SWPPP. If Ware does not incorporate Coastkeeper's comments into the SWPPP, Ware shall explain in writing why any comment is not incorporated within fifteen (15) days of receiving Coastkeeper's comments. Any disputes over the adequacy of a SWPPP shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section III below.

**G.    Compliance Monitoring and Reporting**

24.    <u>Site Inspections</u>. Coastkeeper and its representatives may conduct up to two (2) wet weather site inspections and two (2) dry weather site inspections per year at the Facility during the life of this Consent Decree.

24.1.    The site inspections shall occur during normal business hours and Coastkeeper shall provide Ware with forty-eight (48) hours' notice prior to each wet weather site inspection and seventy-two (72) hours' notice prior to each dry weather site inspection. For any site inspection requested to occur in wet weather, Coastkeeper shall be entitled to adjust timing during normal business hours or reschedule the inspection for an alternative date during normal business hours in the event that the forecast changes and anticipated precipitation appears unlikely, and thus frustrates the purpose of visiting the Facility in wet weather.

24.2.    During the site inspections, Coastkeeper and its representatives shall be allowed access to the Facility's SWPPP, visual observation records,

rain gauge data records, employee training records, and other monitoring records, reports, and sampling data for the Facility. In conjunction and simultaneously with its request for a site inspection Coastkeeper shall advise Ware of its intent to review records and/or data so that these materials are readily available.

24.3.    During the site inspections, Coastkeeper and/or its representatives may inspect and collect samples of stormwater, if any, that are discharged from the Facility and take photos and/or videos related to Storm Water Permit and/or Consent Decree compliance. Ware shall be provided with split samples of all samples collected by Coastkeeper. A certified California laboratory shall analyze samples collected by Coastkeeper and copies of the lab reports shall be provided to Ware within five (5) business days of receipt.

25.    <u>Action Plan Payments</u>. If Ware is required to submit an Action Plan to Coastkeeper in accordance with paragraph 19, Ware shall make payment of $5,000.00 (Five Thousand and No/100 Dollars) per Action plan payable to: "Orange County Coastkeeper," and delivered by wire transfer, or certified mail or overnight delivery at the time an action plan is submitted to Coastkeeper ("Action Plan Payment").

26.    <u>Reporting and Document Provision</u>. During the life of this Consent Decree, Ware shall copy Coastkeeper on all documents related to water quality at the Facility that are submitted to the Regional Board, the State Board, and/or any Federal, State, or local agency, county, or municipality. Such reports and documents shall be provided to Coastkeeper concurrently as they are sent to the agencies, counties, and/or municipalities. Any correspondence related to Ware's compliance with the Storm Water Permit and/or to storm water or wastewater quality received by Ware from any Federal, State, or local agency, county or municipality shall be provided to Coastkeeper within five (5) business days of receipt by Ware.

**H.    Environmental Mitigation Project, Litigation Fees and Costs, Stipulated Penalties and Interest.**

27.    <u>Environmental Mitigation Project</u>. To remediate environmental harms resulting from allegations in the Complaint, Ware agrees make (i) a payment of $62,500.00 (Sixty-Two Thousand Five Hundred and No/100 Dollars) to the Los Cerritos Wetlands Land Trust (the "LCWLT") and (ii) a payment of $62,500.00 (Sixty-Two Thousand Five Hundred and No/100 Dollars) to the Rose Foundation for Communities & the Environment (the "Rose Foundation"), each to fund environmental project activities that will benefit Southern California waters, including local wetlands restoration and/or preservation. Provided that the Federal Agencies have not commented negatively on or objected to the entry of this Consent Decree, both payments shall be made within ten (10) business days of the end of the 45-day Federal Agencies review period described in paragraph 6 above. If the Federal Agencies have commented negatively on or objected to the entry of this Consent Decree, both payments shall be made within ten (10) business days of the approval and entry of the Consent Decree by the Court.  The payment to the LCWLT shall be made via check made payable to the "Los Cerritos Wetlands Land Trust" and delivered to: P.O. Box 30165, Long Beach, California 90853.  The payment to the Rose Foundation shall be made via check made payable to the "Rose Foundation for Communities & the Environment" and delivered to: Rose Foundation, 201 4th St. Ste. 102, Oakland, California 94607. Ware shall copy Coastkeeper and its attorneys on any correspondence relating to such payments. None of the funds paid to the LCWLT or the Rose Foundation shall be used to pay attorneys' fees.

28.    <u>Coastkeeper's Litigation Costs</u>. To partially reimburse Coastkeeper for its investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees, and other costs incurred as a result of investigating, filing, and resolving the lawsuit, and negotiating and implementing this Consent Decree, Ware shall pay a total of $250,000.00 (Two Hundred Fifty Thousand and No/100 Dollars).  Provided that the Federal Agencies have not commented negatively on or objected to the entry of this Consent Decree, the

payment shall be made within ten (10) business days of the end of the 45-day Federal Agencies review period described in paragraph 6 above.  If the Federal Agencies have commented negatively on or objected to the entry of this Consent Decree, the payment shall be made within ten (10) business days of the approval and entry of the Consent Decree by the Court.  The payment shall be made via wire transfer or check, made payable to: "Orange County Coastkeeper" and delivered by certified mail or overnight delivery to: Orange County Coastkeeper, 3151 Airway Avenue, Suite F-110, Costa Mesa, CA 92626.

29. <u>Stipulated Payment</u>. In the event that Ware has missed any deadline specified in the Consent Decree, Coastkeeper shall provide written notice to Ware of such missed deadline. Ware shall have ten (10) business days from receipt of such notice to respond to Coastkeeper, and if necessary cure such delinquency. If Ware fails to respond and, if necessary, cure such alleged delinquency within ten (10) business days of receipt of Coastkeeper's notice, then Ware shall make a stipulated payment of $1,000 (One Thousand and No/100 Dollars) for the missed deadline identified in Coastkeeper's notice. Payments for a missed deadline shall be made for the restoration and/or improvement of the watershed in the area affected by Ware's discharges and shall be made via check made payable to the "Los Cerritos Wetlands Land Trust" and delivered to P.O. Box 30165, Long Beach, California 90853.  Ware agrees to make the stipulated payment within thirty (30) days of a missed deadline. Ware shall provide Coastkeeper with a copy of each such payment at the time it is made.

30. <u>Interest Payments</u>. In the event of late payment of any of the sums due under this Consent Decree, Ware shall pay ten percent (10%) APR interest to Coastkeeper, which shall accrue from the first day past the date the sum was due until the date that Ware tenders payment. All such payments shall be made payable to: "Orange County Coastkeeper" and delivered by wire transfer, or certified mail or overnight delivery to: Orange County Coastkeeper, 3151 Airway Avenue, Suite F-110, Costa Mesa, CA 92626.

## III.   DISPUTE RESOLUTION

31. This Court shall retain jurisdiction over this matter for the life of this Consent

Decree for the purposes of enforcing the terms and conditions of this Consent Decree, and adjudicating all disputes among the Settling Parties that may arise under the provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

32. <u>Meet and Confer</u>. A party to this Consent Decree shall invoke the dispute resolution procedures of this Section by notifying all other Settling Parties in writing of the matter(s) in dispute. The Settling Parties shall then meet and confer in good faith (either telephonically or in person) in an attempt to resolve the dispute over a period of ten (10) days from the date of the notice. The Settling Parties may elect to extend this time in an effort to resolve the dispute without court intervention.

33. If the Settling Parties cannot resolve a dispute through this meet and confer process, the party initiating the dispute resolution provision may invoke formal dispute resolution by filing a motion before the United States District Court for the Central District of California. The Settling Parties agree to request an expedited hearing schedule on the motion.

34. If intervention by the District Court is required, civil penalties and litigation costs and fees incurred in conducting meet and confer or otherwise addressing and/or resolving any dispute, including an alleged breach of this Consent Decree, shall be awarded to the prevailing or substantially prevailing party in accordance with the standard established by Section 505 of the Clean Water Act, 33 U.S.C. §§ 1365(d) and 1319(d), and case law interpreting that standard at the time of the District Court's decision.

## IV. <u>MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE</u>

35. <u>Coastkeeper's Release</u>. Upon the Effective Date of this Consent Decree, Coastkeeper, on its own behalf and on behalf of its current and former officers, directors, employees, and each of their successors and assigns, and its agents, attorneys, and other representatives, hereby releases all persons including, without limitation, Ware (and each of its insurers, current and former officers, directors, members, employees, shareholders and each of their predecessors, successors and assigns, and each of their agents, attorneys,

consultants, and other representatives) of and from, and waives all CWA claims which arise from or pertain to this action, including all claims for injunctive relief, penalties, fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed, and/or CWA claims asserted or that could have been asserted in Coastkeeper's Complaint up to the Effective Date of this Consent Decree.

36.   <u>Ware's Release</u>. Upon the Effective Date of this Consent Decree, Ware, on its own behalf and on behalf of its current and former officers, directors, employees, members, and each of their successors and assigns, and their agents, attorneys, and other representatives, hereby releases Coastkeeper (and its current and former officers, directors, employees, members, parents, subsidiaries, and affiliates, and each of their successors and assigns, and its agents, attorneys, and other representatives) of and from, and waives all claims which arise from or pertain to this action, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed for matters related to, or which could have been asserted in response to, Coastkeeper's Complaint up to the Effective Date of this Consent Decree.

## V.   <u>MISCELLANEOUS PROVISIONS</u>

37.   <u>No Admission of Liability</u>. Neither this Consent Decree, the implementation of additional BMPs nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, admission or acknowledgment of any fact, law, or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. Ware maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

38.   <u>Force Majeure</u>. Force Majeure includes any act of God, war, fire, earthquake, windstorm, flood or natural catastrophe; civil disturbance, vandalism, pandemic (other than COVID-19, unless an order by agency of competent jurisdiction issued after the Effective Date of this Consent Decree results in the inability to perform), sabotage or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. Force

Majeure shall not include normal inclement weather, economic hardship, or inability to pay. Any party seeking to rely upon this paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Settling Parties shall exercise due diligence to resolve and remove any Force Majeure event. Delay in compliance with a specific obligation under this Consent Decree due to Force Majeure as defined in this paragraph shall not excuse or delay compliance with any or all other obligations required under this Consent Decree.

39. <u>Construction</u>. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Storm Water Permit, the Clean Water Act, or specifically herein.

40. <u>Choice of Law</u>. The laws of the United States shall govern this Consent Decree.

41. <u>Severability</u>. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

42. <u>Correspondence</u>. All notices required herein or any other correspondence pertaining to this Consent Decree shall be sent by electronic mail, overnight mail or courier as follows:

<u>If to Plaintiff:</u>

Sarah Spinuzzi, Senior Staff Attorney
Sarah@coastkeeper.org
Lauren Chase, Staff Attorney
Lauren@coastkeeper.org
3151 Airway Avenue, Suite F-110
Costa Mesa, California 92626

<u>If to Defendants</u>:

Jay Ware, General Manager, & Judith Ware
jay@waredisposal.com
Ware Disposal, Inc.

P.O. Box 1318
Santa Ana, CA 92702

<u>With copy to</u>:

Earl L. Hagström Counsel for Defendants
500 Washington Street
San Francisco, California 94111
EHagstrom@BEHBLaw.com

Notifications of communications shall be deemed submitted the next business day after having been deposited with an overnight mail/delivery service. The Settling Parties may also transmit documents electronically. Electronically transmitted documents shall be deemed submitted on the date of the electronic transmission. Any change of address or addresses shall be communicated in the manner described above for giving notices.

43.    <u>Effect of Consent Decree</u>. Except as provided herein, Plaintiff does not, by its consent to this Consent Decree, warrant or aver in any manner that Ware's compliance with this Consent Decree will constitute or result in compliance with any Federal or State law or regulation. Nothing in this Consent Decree shall be construed to affect or limit in any way the obligation of Ware to comply with all Federal, State, and local laws and regulations governing any activity required by this Consent Decree.

44.    <u>Counterparts</u>. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy, email of a .pdf signature, and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

45.    <u>Modification of the Consent Decree</u>. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Settling Parties.

46.    <u>Full Settlement</u>. This Consent Decree constitutes a full and final settlement of this matter.

47.    <u>Integration Clause</u>. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement

between the Settling Parties and expressly supersedes any and all prior oral or written agreements covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

48. <u>Authority</u>. The undersigned representatives for  and Defendants each certify that he/she is fully authorized by the party whom he/she represents to enter into the terms and conditions of this Consent Decree.

49. The provisions of this Consent Decree apply to and bind the Settling Parties, including any successors or assigns. The Settling Parties certify that their undersigned representatives are fully authorized to enter into this Consent Decree, to execute it on behalf of the Settling Parties, and to legally bind the Settling Parties to its terms.

50. The Settling Parties agree to be bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms. By entering into this Consent Decree, Ware does not admit liability for any purpose as to any allegation or matter arising out of the Notice Letter and Complaint.

**IN WITNESS WHEREOF**, the undersigned have executed this Consent Decree as of the date first set forth below.

APPROVED AS TO CONTENT

Dated:  <u>June 25      </u>, 2021       By:  <u> /s/Garry Brown                              </u>
                                                            Garry Brown
                                                            Orange County Coastkeeper


Dated:  <u>June 28      </u>, 2021       By: <u>/s/ Jay B. Ware</u>

                                                    Name: <u>Jay B. Ware</u>

                                                    Title: <u>General Manager</u>

APPROVED AS TO FORM

LAW OFFICE OF JENNIFER F. NOVAK

Dated:       June 28      , 2021          By: /s/Jennifer F. Novak
                                          Jennifer F. Novak
                                          Attorney for Plaintiff


                                           BASSI, EDLIN, HUIE & BLUM LLP


Dated:       June 28      , 2021          By: /s/Earl. L. Hagstrom
                                          Earl L. Hagström
                                          Attorney for Defendants


**IT IS SO ORDERED.**                     UNITED STATES DISTRICT COURT
                                          CENTRAL DISTRICT OF CALIFORNIA


Date: August 31, 2021

                                          FERNANDO L. AENLLE-ROCHA
                                          United States District Judge

# EXHIBIT "A"

Jennifer F. Novak (SBN 183882)
Email: novak@jfnovaklaw.com
LAW OFFICE OF JENNIFER F. NOVAK
500 Silver Spur Road, Suite 206
Rancho Palos Verdes, California 90275
Telephone: (310) 693-0775
Facsimile: (310) 957-2624

Sarah J. Spinuzzi (SBN 305658)
Email: sarah@coastkeeper.org
Lauren D. Chase (SBN 324162)
Email: lauren@coastkeeper.org
ORANGE COUNTY COASTKEEPER
3151 Airway Ave, Suite F-110
Costa Mesa, CA 92626
Telephone: (714) 850-1965

*Attorneys for Plaintiff*
ORANGE COUNTY COASTKEEPER

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ORANGE COUNTY COASTKEEPER, a California non-profit corporation, | Civil Case No. 8:20-cv-1565 |
| Plaintiff, | **[Proposed] CONSENT DECREE** |
| vs. | |
| WARE DISPOSAL INC., a California corporation; BJW PROPERTIES, LLC, a California limited liability company | |
| Defendants. | |

## **CONSENT DECREE**

The following Consent Decree is entered into by and between Plaintiff Orange County Coastkeeper ("Plaintiff" or "Coastkeeper"), and Defendants Ware Disposal, Inc. and BJW Properties, LLC (together, "Defendants" or "Ware"). The entities entering into this Consent Decree are each an individual "Settling Party" and collectively the "Settling Parties."

**WHEREAS**, Orange County Coastkeeper is a non-profit public benefit corporation dedicated to the preservation, protection, and restoration of the environment, the wildlife and the natural resources of all waters of California, including the San Gabriel River and its tributaries;

**WHEREAS**, Ware operates a truck/bin maintenance facility at 1451 Manhattan Ave., Fullerton, California 92831 (the "Facility") in support of its business operations, which include the collection of municipal waste from private and public entities;

**WHEREAS**, the Standard Industrial Classification ("SIC") code applicable to the Facility is 4212 (Local Trucking Without Storage);

**WHEREAS**, Coastkeeper alleges that BJW Properties LLC, is the owner and Ware Disposal Inc. is an operator of the Facility;

**WHEREAS**, discharges from the Facility are regulated by the National Pollutant Discharge Elimination System ("NPDES") General Permit No. CAS000001 [State Water Resources Control Board] Water Quality Order No. 92-12-DWQ, as amended by Order No. 97-03-DWQ, as amended by Order No. 2014-0057-DWQ, as amended by Order No. 2015-0122-DWQ (collectively, as amended, and as may be amended from time to time, the "Storm Water Permit"), issued pursuant to Section 402 of the Federal Water Pollution Control Act, 33 U.S.C. §§ 1251 *et seq.* (the "Clean Water Act" or the "CWA") and;

**WHEREAS**, on June 11, 2020, Coastkeeper issued a 60-day notice letter (the "Notice Letter") to Defendants alleging violations of the Storm Water Permit and the Clean Water Act at the Facility;

**WHEREAS**, on August 21, 2020, Coastkeeper filed a complaint against Defendants

(the "Complaint") in the United States District Court, Central District of California (Civil Case No. 8:20-cv-1565) (the "Action");

**WHEREAS**, Coastkeeper alleges Defendants are violating the substantive and procedural requirements of the Storm Water Permit and the Clean Water Act;

**WHEREAS**, Ware denies all allegations in the Notice Letter and the Complaint;

**WHEREAS**, the Settling Parties have agreed that it is in their mutual interest to enter into a Consent Decree in this Action setting forth terms and conditions appropriate to resolving the allegations set forth in the Notice Letter and the Complaint without further proceedings;

**WHEREAS**, the Settling Parties agree that all references to Defendants' future compliance with the "Storm Water Permit" shall refer to the then-effective version of the Storm Water Permit.

**WHEREAS**, the Settling Parties agree that each and every WHEREAS clause above is a material part of the Consent Decree.

**NOW THEREFORE IT IS HEREBY STIPULATED BETWEEN THE SETTLING PARTIES AND ORDERED AND DECREED BY THE COURT AS FOLLOWS:**

1. The Court has jurisdiction over the subject matter of this action pursuant to Section 505(a)(1)(A) of the Clean Water Act, 33 U.S.C. § 1365(a)(1)(A).

2. Venue is appropriate in the Central District pursuant to Section 505(c)(1) of the Clean Water Act, 33 U.S.C. § 1365(c)(1), because the Facility is located within this District.

3. The Complaint states claims upon which relief may be granted pursuant to Section 505 of the Clean Water Act, 33 U.S.C. § 1365.

4. Plaintiff has standing to bring this action.

5. The Court shall retain jurisdiction over this matter for purposes of enforcing the terms of this Consent Decree for the life of the Consent Decree, or as long thereafter as is necessary for the Court to resolve any motion to enforce this Consent Decree.

## I.    <u>AGENCY REVIEW AND TERM OF CONSENT DECREE</u>

6.    Plaintiff shall submit this Consent Decree to the United States Department of Justice and the Environmental Protection Agency (collectively, the "Federal Agencies") within three (3) business days of the Effective Date for agency review consistent with 40 C.F.R. § 135.5. The Federal Agencies' review period expires forty-five (45) days after receipt of this Consent Decree by the Federal Agencies, as evidenced by the return receipts, copies of which shall be provided by Coastkeeper to Defendants upon request.  In the event that the Federal Agencies comment negatively on or object to entry of this Consent Decree, the Settling Parties agree to meet and confer to attempt to resolve the issue(s) raised by the Federal Agencies within a reasonable amount of time.

7.    The term "Effective Date" as used in this Consent Decree shall mean the day that this Consent Decree is fully executed by the Settling Parties.

8.    This Consent Decree shall terminate on the later of the following events: (i) three (3) years from the Effective Date; or (ii) if an Action Plan (as defined in this agreement) is required per paragraph 19 below during the 2023-2024 reporting year[1], on January 31, 2025; or (iii) if there is an ongoing, unresolved dispute regarding Ware's compliance with this Consent Decree, within fifteen (15) days of notice by the Settling Parties that the dispute has been fully resolved.

## II.    <u>COMMITMENTS OF THE SETTLING PARTIES</u>

### A.    **Storm Water Pollution Control Best Management Practices**

9.    In addition to maintaining the current Best Management Practices ("BMPs") at the Facility, Ware shall develop and implement the BMPs identified herein, as well as any other BMPs necessary to comply with the provisions of this Consent Decree and the Storm Water Permit. Specifically, Ware shall develop and implement BMPs to prevent and/or to reduce contamination in storm water discharged from the Facility consistent with use of the Best Available Technology Economically Achievable ("BAT") and the Best

---

[1] Reporting year is from July 1-June 30.

Conventional Treatment Technology ("BCT") and/or in compliance with water quality standards ("WQS").

10. <u>BMPs</u>. No later than September 1, 2021, Ware shall develop and fully implement the following BMPs at the Facility:

10.1.    Installation of a rain gauge at the site capable of measuring and recording rainfall from at least 0.1 inches at the facility.

10.2.    Installation of an infiltration gallery designed to capture and infiltrate at a minimum, all runoff from Ware resulting from a 10-year/24-hour storm event.

10.3.    To contain storm water on-site, permanent curbing will be installed along the entire northern property line and along the portion of southern property line not already contained by the adjacent building.  The existing block wall along the western property line prevents runoff to the west and Ware will inspect the perimeter curbing and this western wall during rain events and document such inspection with video recordings to confirm there is no offsite runoff.  If runoff is observed, additional curbing will be installed to prevent runoff from discharging offsite. A map of the curbing will be included in the SWPPP.

10.4.    A sump will be installed in the drainage area north of the administration building.  Following rain events, a pump will be used to convey runoff into the drainage area west of the administrative building that flows to the infiltration basin. No more than forty-eight (48) hours following the cessation of a rain event, standing water will be pumped to the infiltration basin.  The persons or position responsible for pumping standing water will be identified in the SWPPP.

10.5.    All inactive vehicles will be inspected on a daily basis and drip pans will be deployed below any vehicles observed to be leaking fluids.

10.6.    Trash truck parking areas will be inspected on a daily basis and drip

1        pans will be deployed below trucks observed to be leaking.

2    10.7.    All exposed areas of industrial activity will be inspected on a daily basis

3        for indications of spilled or leaked fluids.  Identified spills or leaks shall

4        be promptly removed by excavation or by using absorbent material.

5        The excavated soil and/or absorbent material will be placed in drums

6        and managed according to applicable regulations.

7    10.8.    All painting and oil changes shall be conducted under cover without

8        exposure to storm water.  Daily inspections will be conducted in

9        exposed areas where bin repair or vehicle maintenance occurs.

10        Identified spills, leaks or repair-related residues shall be promptly

11        removed by excavation or by using absorbent material. The excavated

12        soil, absorbent material, or residue will be placed in drums and

13        managed according to applicable regulations.

14    10.9.    Ware shall implement a weekly site sweeping or vacuuming program

15        covering the paved exterior areas of the facility.

16    10.10.    Ware shall provide Coastkeeper written documentation demonstrating

17        that the required BMPs have been implemented in compliance with this

18        section within fifteen (15) days of completion.

19    B.    **Storm Water Sampling**

20    11.    <u>Sampling</u>. The following storm water monitoring procedures shall be

21    implemented at the Facility:

22    11.1.    <u>Frequency</u>. During the life of this Consent Decree and thereafter in

23        compliance with the Storm Water Permit, Ware shall collect samples

24        from at least four (4) storm water discharges per reporting year from

25        each of the discharge locations at the Facility provided that at least four

26        (4) Qualified Storm Events, as defined in the Storm Water Permit

27        ("QSEs") occur during the applicable reporting year. QSEs, as defined

28        in the Storm Water Permit, are precipitation events that produce a

discharge from at least one (1) drainage area and are preceded by forty-eight (48) hours with no discharge from any drainage area.

11.2. <u>Documentation</u>. To document the storm water discharge and discharge location, the person who collects a storm water sample at the Facility will take photographs of the storm water discharge and discharge location when the sample is collected.

11.3. <u>Parameters</u>. All samples collected pursuant to this section shall be analyzed for the parameters listed in Table 1.

11.4. <u>Lab</u>. A laboratory accredited by the State of California shall analyze all samples collected pursuant to this Consent Decree.

11.5. <u>Detection Limits</u>. The laboratory shall use analytical methods adequate to detect the individual parameters at or below the values specified in Table 1.

11.6. <u>Holding Time</u>. All samples collected from the Facility shall be delivered to the laboratory and analyzed within the holding times required in 40 CFR Part 136.

11.7. <u>Results</u>. Ware shall request that sample-analysis results and associated chain of custody forms be reported to them within fourteen (14) business days of laboratory receipt of the sample.

11.8. <u>Reporting</u>. Ware shall provide the complete lab results and photographs of all samples collected at the Facility to Coastkeeper within five (5) business days of receipt during the life of this Consent Decree.

12. <u>Rain Gauge Data</u>. In addition to the reporting requirements of paragraph 26 below, Defendants shall provide the rain gauge data records described in paragraph 10.1 to Coastkeeper along with lab results submitted to Coastkeeper pursuant to paragraph 11.7.

C. **Visual Observations**

13. <u>Rain Event Visual Observations</u>. During the life of the Consent Decree, Defendant shall visually monitor the effectiveness of the BMPs during at least six (6) rain

events, and record observations with the use of photographs and video footage of the perimeter of the facility. Defendant shall send all photographs and videos to Coastkeeper within five (5) business days of each visual monitoring event.

14. <u>Non-Storm Water Discharge Observations</u>. During the life of this Consent Decree, Ware shall conduct monthly non-storm water visual observations of its BMPs in accordance with Section XI.A. of the Permit.

15. <u>Visual Observation Records</u>. Ware shall maintain observation records to document compliance with this section and shall provide Coastkeeper with a copy of these records within fourteen (14) business days of receipt of a written request.

D. **Employee Training**

16. Within thirty (30) days of the Effective Date, Ware shall develop and implement a training program to ensure: (1) that there are a sufficient number of employees delegated to achieve compliance with the Storm Water Permit and this Consent Decree at the Facility, and (2) that these employees are properly trained to perform the required activities to achieve compliance with the Storm Water Permit and this Consent Decree (the "Training Program"). At a minimum the Training Program shall include:

16.1. <u>Non-Storm Water Discharges</u>. Employees will be trained on the Storm Water Permit's prohibition of non-storm water discharges, so that employees know what non-storm water discharges are, that non-storm water discharges can result from improper surface washing or dust control methods, and how to detect and prevent non-storm water discharges.

16.2. <u>The SWPPP and BMPs</u>. Ware shall train all employees on the SWPPP and specifically BMP implementation and/or maintenance, as applicable, to ensure that BMPs are implemented effectively to prevent the exposure of pollutants to storm water, to prevent the discharge of contaminated storm water, and to ensure the proper treatment of storm water at the Facility.

16.3. <u>Storm Water Sampling and Visual Monitoring</u>. Ware shall designate an adequate number of employees necessary to collect storm water samples from each discharge location at the Facility and conduct visual monitoring as required by this Consent Decree. The training shall include the proper sampling protocols, including chain of custody requirements, to ensure storm water samples are properly collected, stored, and submitted to a certified laboratory.

16.4. <u>Training Implementation</u>. A private consultant, or a Ware representative who is familiar with the requirements of this Consent Decree and the Storm Water Permit shall implement the Training Program at the Facility. The Training Program shall be conducted in the language of the employee(s) participating in the Training Program. The Training Program shall be repeated annually, or as necessary to ensure that all responsible employees are familiar with the requirements of this Consent Decree and the Storm Water Permit. All new staff will receive this training before assuming responsibilities for compliance with this Consent Decree or the Storm Water Permit.

17. <u>Training Records</u>. Ware shall maintain training records to document compliance with this section and shall provide Coastkeeper with a copy of these records within fourteen (14) business days of receipt of a written request.

E. **Reduction of Pollutants in Discharges**

18. <u>Storm Water Contaminant Reduction</u>. Contaminants in discharges, if any, shall not exceed the limits in Table 1 ("Numeric Limits"), except as provided herein. After September 1, 2021 and for the remainder of the life of this Consent Decree, the exceedance of any two (2) Numeric Limits in Table 1 for storm water samples collected during a reporting year from the Facility shall trigger the action plan requirement of paragraph 19.

**Table 1. Numeric Limits for Storm Water Discharges[2]**

| Parameter | Limit | Source of Limit |
|---|---|---|
| Total Suspended Solids | 100 mg/L | IGP |
| Total Recoverable Copper | 0.027 mg/L | IGP/NEL |
| Total Recoverable Lead | 0.106 mg/L | IGP/NEL |
| Total Recoverable Zinc | 0.158 mg/L | IGP/NEL |
| Oil and Grease | 15 mg/L | IGP |
| Total Recoverable Aluminum | 0.75 mg/L | IGP |
| Total Recoverable Iron | 1.0 mg/L | IGP |
| Chemical Oxygen Demand | 120 mg/L | IGP |
| Biological Oxygen Demand | 30 mg/L | IGP |
| pH | 6.5 – 8.5 S.U. | Basin Plan |
| Coliform, E. Coli | 126 MPN/100ml | Basin Plan |
| Enterococcus | 35 MPN/100ml | Basin Plan |

19.     <u>Action Plan</u>. If the exceedances of the Table 1 Numeric Limits in the storm water samples collected at the Facility in a particular reporting year are more than the number(s) permitted in paragraph 18 above, then Ware shall submit a plan for reducing and/or eliminating the discharge of pollutants designed to achieve the Table 1 Numeric Limits during the next reporting year at the Facility ("Action Plan"). In any year that an Action Plan is required, it shall be submitted by July 1 immediately following the reporting year during which the exceedance occurred.

19.1.     <u>Requirements</u>. Each Action Plan submitted shall include at a minimum: (1) the identification of the contaminant(s) discharged in excess of the Numeric Limit(s), (2) an assessment of the source of each contaminant exceedance, (3) the identification of additional BMPs, including treating stormwater or other appropriate measures, that will be implemented to achieve compliance with the Numeric Limit(s), and (4) time schedules for implementation of the proposed BMPs. The time schedule(s) for implementation shall ensure that all BMPs are implemented as soon as possible, but in no case later than October 1.

---

[2] Several of the Numeric Limits are hardness dependent. The 2008 EPA Benchmark based limits expressed assume hardness of 101 mg/l CaCO₃. Defendants shall adjust the limit using the methods provided in Appendix J of the 2008 EPA Multi-Sector General Permit based on receiving water sampling hardness data as applicable.

19.2.     <u>Action Plan Review</u>. Coastkeeper shall have thirty (30) days upon receipt of Ware's Action Plan to provide Ware with comments. Within fifteen (15) days of Ware's receipt of Coastkeeper's comments on the Action Plan, Ware shall accept and incorporate Coastkeeper's comments of recommended BMPs into the Action Plan, or shall provide Coastkeeper with a written explanation of the reason(s) for not developing and/or implementing one or more of Coastkeeper's recommended BMPs. Disputes regarding Coastkeeper's comments or the adequacy of a particular BMP shall not impact the schedule for implementing any other BMP set forth in the Action Plan. Any disputes as to the adequacy of the Action Plan shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section III below.

20.     When an Action Plan is completed, Ware shall revise its SWPPP within thirty (30) days of completion of the Action Plan to reflect the changes required by the Action Plan. Ware shall notify Coastkeeper when the Action Plan has been completely implemented and shall submit the revised SWPPP to Coastkeeper for review and comment as set out in paragraphs 22-23 below. Disagreements as to the revised SWPPP shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section III below.

**F.**    **Storm Water Pollution Prevention Plan**

21.     <u>SWPPP</u>. As soon as possible, but no later than September 1, 2021, Ware shall revise the SWPPP for the Facility to incorporate the requirements of the Storm Water Permit and this Consent Decree, including but not limited to the following:

21.1.     Identifying the individual(s) responsible for compliance with the Storm Water Permit and this Consent Decree including specifying which individual is responsible for what area of compliance (e.g., John Doe: collecting storm water samples);

21.2.   Revising the facility site map and site description to include all features required in the Storm Water Permit and to reflect all areas associated with ongoing industrial activities including bin storage, cleaning, and maintenance; vehicle and equipment cleaning operations; vehicle and equipment refueling; vehicle and equipment maintenance; vehicle and equipment painting; storage of materials associated with equipment and vehicle maintenance; and storage of vehicles and equipment, and the requirements of this Consent Decree;

21.3.   Revising the facility site map and site description to identify discharge locations, if any and indicate flow direction;

21.4.   Revising the pollutant source assessment to include all identified pollutants within the impaired watershed including, but not limited to, Coliform, E.Coli and Enterococcus and all other Table 1 pollutants;

21.5.   Revising the monitoring plan to address all pollutants identified in the pollutant source assessment;

21.6.   Revising the list of significant materials description to include the identification of the location where the material is being stored, received, shipped, and handled, as well as its quantity;

21.7.   Remove all erroneous references to sanitary sewer connection(s);

21.8.   Creation of a visual inspection form that must be used by trained facility personnel when conducting the visual observations and monitoring of storm water required under the Storm Water Permit and/or under this Consent Decree;

21.9.   Include the Storm Water Permit's sampling and monitoring requirements including but not limited to the facility's sample locations; and

21.10.  Include sample analysis for all applicable pollutants including at those listed in Table 1.

22. <u>Revising the SWPPP</u>. Ware shall revise the Facility SWPPP whenever necessary in accordance with the terms of the Storm Water Permit, including, but not limited to, if there are any changes in the Facility's storm water discharge point(s) or changes or additions to the BMPs at the Facility whether made pursuant to an Action Plan or not, within thirty (30) days of the occurrence of any of the above-listed events.

23. <u>Commenting on Revised SWPPPs</u>. Ware shall submit each revised SWPPP to Coastkeeper for review and comment within ten (10) days of its completion. Coastkeeper shall provide comments, if any, to Ware within thirty (30) days of receipt of the SWPPP. If Ware does not incorporate Coastkeeper's comments into the SWPPP, Ware shall explain in writing why any comment is not incorporated within fifteen (15) days of receiving Coastkeeper's comments. Any disputes over the adequacy of a SWPPP shall be resolved pursuant to the dispute resolution provisions of this Consent Decree, set out in Section III below.

G. **Compliance Monitoring and Reporting**

24. <u>Site Inspections</u>. Coastkeeper and its representatives may conduct up to two (2) wet weather site inspections and two (2) dry weather site inspections per year at the Facility during the life of this Consent Decree.

24.1. The site inspections shall occur during normal business hours and Coastkeeper shall provide Ware with forty-eight (48) hours' notice prior to each wet weather site inspection and seventy-two (72) hours' notice prior to each dry weather site inspection. For any site inspection requested to occur in wet weather, Coastkeeper shall be entitled to adjust timing during normal business hours or reschedule the inspection for an alternative date during normal business hours in the event that the forecast changes and anticipated precipitation appears unlikely, and thus frustrates the purpose of visiting the Facility in wet weather.

24.2. During the site inspections, Coastkeeper and its representatives shall be allowed access to the Facility's SWPPP, visual observation records,

[Proposed] Consent Decree       13       Civil Case No. 8:20-cv-1565

rain gauge data records, employee training records, and other monitoring records, reports, and sampling data for the Facility. In conjunction and simultaneously with its request for a site inspection Coastkeeper shall advise Ware of its intent to review records and/or data so that these materials are readily available.

24.3.    During the site inspections, Coastkeeper and/or its representatives may inspect and collect samples of stormwater, if any, that are discharged from the Facility and take photos and/or videos related to Storm Water Permit and/or Consent Decree compliance. Ware shall be provided with split samples of all samples collected by Coastkeeper. A certified California laboratory shall analyze samples collected by Coastkeeper and copies of the lab reports shall be provided to Ware within five (5) business days of receipt.

25.    <u>Action Plan Payments</u>. If Ware is required to submit an Action Plan to Coastkeeper in accordance with paragraph 19, Ware shall make payment of $5,000.00 (Five Thousand and No/100 Dollars) per Action plan payable to: "Orange County Coastkeeper," and delivered by wire transfer, or certified mail or overnight delivery at the time an action plan is submitted to Coastkeeper ("Action Plan Payment").

26.    <u>Reporting and Document Provision</u>. During the life of this Consent Decree, Ware shall copy Coastkeeper on all documents related to water quality at the Facility that are submitted to the Regional Board, the State Board, and/or any Federal, State, or local agency, county, or municipality. Such reports and documents shall be provided to Coastkeeper concurrently as they are sent to the agencies, counties, and/or municipalities. Any correspondence related to Ware's compliance with the Storm Water Permit and/or to storm water or wastewater quality received by Ware from any Federal, State, or local agency, county or municipality shall be provided to Coastkeeper within five (5) business days of receipt by Ware.

1  H. **Environmental Mitigation Project, Litigation Fees and Costs,**

2   **Stipulated Penalties and Interest.**

3   27. <u>Environmental Mitigation Project</u>. To remediate environmental harms

4 resulting from allegations in the Complaint, Ware agrees make (i) a payment of $62,500.00

5 (Sixty-Two Thousand Five Hundred and No/100 Dollars) to the Los Cerritos Wetlands

6 Land Trust (the "LCWLT") and (ii) a payment of $62,500.00 (Sixty-Two Thousand Five

7 Hundred and No/100 Dollars) to the Rose Foundation for Communities & the Environment

8 (the "Rose Foundation"), each to fund environmental project activities that will benefit

9 Southern California waters, including local wetlands restoration and/or preservation.

10 Provided that the Federal Agencies have not commented negatively on or objected to the

11 entry of this Consent Decree, both payments shall be made within ten (10) business days

12 of the end of the 45-day Federal Agencies review period described in paragraph 6 above.

13 If the Federal Agencies have commented negatively on or objected to the entry of this

14 Consent Decree, both payments shall be made within ten (10) business days of the approval

15 and entry of the Consent Decree by the Court.  The payment to the LCWLT shall be made

16 via check made payable to the "Los Cerritos Wetlands Land Trust" and delivered to: P.O.

17 Box 30165, Long Beach, California 90853.  The payment to the Rose Foundation shall be

18 made via check made payable to the "Rose Foundation for Communities & the

19 Environment" and delivered to: Rose Foundation, 201 4th St. Ste. 102, Oakland, California

20 94607. Ware shall copy Coastkeeper and its attorneys on any correspondence relating to

21 such payments. None of the funds paid to the LCWLT or the Rose Foundation shall be

22 used to pay attorneys' fees.

23   28. <u>Coastkeeper's Litigation Costs</u>. To partially reimburse Coastkeeper for its

24 investigation fees and costs, expert/consultant fees and costs, reasonable attorneys' fees,

25 and other costs incurred as a result of investigating, filing, and resolving the lawsuit, and

26 negotiating and implementing this Consent Decree, Ware shall pay a total of $250,000.00

27 (Two Hundred Fifty Thousand and No/100 Dollars).  Provided that the Federal Agencies

28 have not commented negatively on or objected to the entry of this Consent Decree, the

payment shall be made within ten (10) business days of the end of the 45-day Federal Agencies review period described in paragraph 6 above. If the Federal Agencies have commented negatively on or objected to the entry of this Consent Decree, the payment shall be made within ten (10) business days of the approval and entry of the Consent Decree by the Court. The payment shall be made via wire transfer or check, made payable to: "Orange County Coastkeeper" and delivered by certified mail or overnight delivery to: Orange County Coastkeeper, 3151 Airway Avenue, Suite F-110, Costa Mesa, CA 92626.

29. <u>Stipulated Payment</u>. In the event that Ware has missed any deadline specified in the Consent Decree, Coastkeeper shall provide written notice to Ware of such missed deadline. Ware shall have ten (10) business days from receipt of such notice to respond to Coastkeeper, and if necessary cure such delinquency. If Ware fails to respond and, if necessary, cure such alleged delinquency within ten (10) business days of receipt of Coastkeeper's notice, then Ware shall make a stipulated payment of $1,000 (One Thousand and No/100Dollars) for the missed deadline identified in Coastkeeper's notice. Payments for a missed deadline shall be made for the restoration and/or improvement of the watershed in the area affected by Ware's discharges and shall be made via check made payable to the "Los Cerritos Wetlands Land Trust" and delivered to P.O. Box 30165, Long Beach, California 90853. Ware agrees to make the stipulated payment within thirty (30) days of a missed deadline. Ware shall provide Coastkeeper with a copy of each such payment at the time it is made.

30. <u>Interest Payments</u>. In the event of late payment of any of the sums due under this Consent Decree, Ware shall pay ten percent (10%) APR interest to Coastkeeper, which shall accrue from the first day past the date the sum was due until the date that Ware tenders payment. All such payments shall be made payable to: "Orange County Coastkeeper" and delivered by wire transfer, or certified mail or overnight delivery to: Orange County Coastkeeper, 3151 Airway Avenue, Suite F-110, Costa Mesa, CA 92626.

## III. <u>DISPUTE RESOLUTION</u>

31. This Court shall retain jurisdiction over this matter for the life of this Consent

Decree for the purposes of enforcing the terms and conditions of this Consent Decree, and adjudicating all disputes among the Settling Parties that may arise under the provisions of this Consent Decree. The Court shall have the power to enforce this Consent Decree with all available legal and equitable remedies, including contempt.

32. <u>Meet and Confer</u>. A party to this Consent Decree shall invoke the dispute resolution procedures of this Section by notifying all other Settling Parties in writing of the matter(s) in dispute. The Settling Parties shall then meet and confer in good faith (either telephonically or in person) in an attempt to resolve the dispute over a period of ten (10) days from the date of the notice. The Settling Parties may elect to extend this time in an effort to resolve the dispute without court intervention.

33. If the Settling Parties cannot resolve a dispute through this meet and confer process, the party initiating the dispute resolution provision may invoke formal dispute resolution by filing a motion before the United States District Court for the Central District of California. The Settling Parties agree to request an expedited hearing schedule on the motion.

34. If intervention by the District Court is required, civil penalties and litigation costs and fees incurred in conducting meet and confer or otherwise addressing and/or resolving any dispute, including an alleged breach of this Consent Decree, shall be awarded to the prevailing or substantially prevailing party in accordance with the standard established by Section 505 of the Clean Water Act, <u>33 U.S.C. §§ 1365(d)</u> and <u>1319(d)</u>, and case law interpreting that standard at the time of the District Court's decision.

## IV. <u>MUTUAL RELEASE OF LIABILITY AND COVENANT NOT TO SUE</u>

35. <u>Coastkeeper's Release</u>. Upon the Effective Date of this Consent Decree, Coastkeeper, on its own behalf and on behalf of its current and former officers, directors, employees, and each of their successors and assigns, and its agents, attorneys, and other representatives, hereby releases all persons including, without limitation, Ware (and each of its insurers, current and former officers, directors, members, employees, shareholders and each of their predecessors, successors and assigns, and each of their agents, attorneys,

consultants, and other representatives) of and from, and waives all CWA claims which arise from or pertain to this action, including all claims for injunctive relief, penalties, fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed, and/or CWA claims asserted or that could have been asserted in Coastkeeper's Complaint up to the Effective Date of this Consent Decree.

36. <u>Ware's Release</u>. Upon the Effective Date of this Consent Decree, Ware, on its own behalf and on behalf of its current and former officers, directors, employees, members, and each of their successors and assigns, and their agents, attorneys, and other representatives, hereby releases Coastkeeper (and its current and former officers, directors, employees, members, parents, subsidiaries, and affiliates, and each of their successors and assigns, and its agents, attorneys, and other representatives) of and from, and waives all claims which arise from or pertain to this action, including all claims for fees (including fees of attorneys, experts, and others), costs, expenses or any other sum incurred or claimed for matters related to, or which could have been asserted in response to, Coastkeeper's Complaint up to the Effective Date of this Consent Decree.

## V. <u>MISCELLANEOUS PROVISIONS</u>

37. <u>No Admission of Liability</u>. Neither this Consent Decree, the implementation of additional BMPs nor any payment pursuant to the Consent Decree shall constitute or be construed as a finding, adjudication, admission or acknowledgment of any fact, law, or liability, nor shall it be construed as an admission of violation of any law, rule, or regulation. Ware maintains and reserves all defenses it may have to any alleged violations that may be raised in the future.

38. <u>Force Majeure</u>. Force Majeure includes any act of God, war, fire, earthquake, windstorm, flood or natural catastrophe; civil disturbance, vandalism, pandemic (other than COVID-19, unless an order by agency of competent jurisdiction issued after the Effective Date of this Consent Decree results in the inability to perform), sabotage or terrorism; restraint by court order or public authority or agency; or action or non-action by, or inability to obtain the necessary authorizations or approvals from any governmental agency. Force

Majeure shall not include normal inclement weather, economic hardship, or inability to pay. Any party seeking to rely upon this paragraph to excuse or postpone performance shall have the burden of establishing that it could not reasonably have been expected to avoid the Force Majeure event and which by exercise of due diligence has been unable to overcome the failure of performance. The Settling Parties shall exercise due diligence to resolve and remove any Force Majeure event. Delay in compliance with a specific obligation under this Consent Decree due to Force Majeure as defined in this paragraph shall not excuse or delay compliance with any or all other obligations required under this Consent Decree.

39. <u>Construction</u>. The language in all parts of this Consent Decree shall be construed according to its plain and ordinary meaning, except as to those terms defined in the Storm Water Permit, the Clean Water Act, or specifically herein.

40. <u>Choice of Law</u>. The laws of the United States shall govern this Consent Decree.

41. <u>Severability</u>. In the event that any provision, paragraph, section, or sentence of this Consent Decree is held by a court to be unenforceable, the validity of the enforceable provisions shall not be adversely affected.

42. <u>Correspondence</u>. All notices required herein or any other correspondence pertaining to this Consent Decree shall be sent by electronic mail, overnight mail or courier as follows:

> <u>If to Plaintiff:</u>
>
> Sarah Spinuzzi, Senior Staff Attorney
> Sarah@coastkeeper.org
> Lauren Chase, Staff Attorney
> Lauren@coastkeeper.org
> 3151 Airway Avenue, Suite F-110
> Costa Mesa, California 92626
>
> <u>If to Defendants</u>:
>
> Jay Ware, General Manager, & Judith Ware
> jay@waredisposal.com
> Ware Disposal, Inc.

P.O. Box 1318
Santa Ana, CA 92702

<u>With copy to:</u>

Earl L. Hagström Counsel for Defendants
500 Washington Street
San Francisco, California 94111
EHagstrom@BEHBLaw.com

Notifications of communications shall be deemed submitted the next business day after having been deposited with an overnight mail/delivery service. The Settling Parties may also transmit documents electronically. Electronically transmitted documents shall be deemed submitted on the date of the electronic transmission. Any change of address or addresses shall be communicated in the manner described above for giving notices.

43. <u>Effect of Consent Decree</u>. Except as provided herein, Plaintiff does not, by its consent to this Consent Decree, warrant or aver in any manner that Ware's compliance with this Consent Decree will constitute or result in compliance with any Federal or State law or regulation. Nothing in this Consent Decree shall be construed to affect or limit in any way the obligation of Ware to comply with all Federal, State, and local laws and regulations governing any activity required by this Consent Decree.

44. <u>Counterparts</u>. This Consent Decree may be executed in any number of counterparts, all of which together shall constitute one original document. Telecopy, email of a .pdf signature, and/or facsimile copies of original signature shall be deemed to be originally executed counterparts of this Consent Decree.

45. <u>Modification of the Consent Decree</u>. This Consent Decree, and any provisions herein, may not be changed, waived, discharged, or terminated unless by a written instrument, signed by the Settling Parties.

46. <u>Full Settlement</u>. This Consent Decree constitutes a full and final settlement of this matter.

47. <u>Integration Clause</u>. This is an integrated Consent Decree. This Consent Decree is intended to be a full and complete statement of the terms of the agreement

between the Settling Parties and expressly supersedes any and all prior oral or written agreements covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

48. Authority. The undersigned representatives for  and Defendants each certify that he/she is fully authorized by the party whom he/she represents to enter into the terms and conditions of this Consent Decree.

49. The provisions of this Consent Decree apply to and bind the Settling Parties, including any successors or assigns. The Settling Parties certify that their undersigned representatives are fully authorized to enter into this Consent Decree, to execute it on behalf of the Settling Parties, and to legally bind the Settling Parties to its terms.

50. The Settling Parties agree to be bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms. By entering into this Consent Decree, Ware does not admit liability for any purpose as to any allegation or matter arising out of the Notice Letter and Complaint.

**IN WITNESS WHEREOF**, the undersigned have executed this Consent Decree as of the date first set forth below.

APPROVED AS TO CONTENT

Dated: _____June 25_____, 2021      By: _____
                                     Garry Brown
                                     Orange County Coastkeeper

Dated: _____, 2021          By: _____
                                     Name:_____
                                     Title:_____

APPROVED AS TO FORM

                                     LAW OFFICE OF JENNIFER F. NOVAK

between the Settling Parties and expressly supersedes any and all prior oral or written agreements covenants, representations, and warranties (express or implied) concerning the subject matter of this Consent Decree.

48. <u>Authority</u>. The undersigned representatives for  and Defendants each certify that he/she is fully authorized by the party whom he/she represents to enter into the terms and conditions of this Consent Decree.

49. The provisions of this Consent Decree apply to and bind the Settling Parties, including any successors or assigns. The Settling Parties certify that their undersigned representatives are fully authorized to enter into this Consent Decree, to execute it on behalf of the Settling Parties, and to legally bind the Settling Parties to its terms.

50. The Settling Parties agree to be bound by this Consent Decree and not to contest its validity in any subsequent proceeding to implement or enforce its terms. By entering into this Consent Decree, Ware does not admit liability for any purpose as to any allegation or matter arising out of the Notice Letter and Complaint.

**IN WITNESS WHEREOF**, the undersigned have executed this Consent Decree as of the date first set forth below.

APPROVED AS TO CONTENT

Dated: _____, 2021          By: _____
                                       Garry Brown
                                       Orange County Coastkeeper

Dated: 6/28, 2021                      By: _____
                                       Name: JAY BWARE
                                       Title: GENERAL MANAGER

APPROVED AS TO FORM

                                       LAW OFFICE OF JENNIFER F. NOVAK

[Proposed] Consent Decree          21          Civil Case No. 8:20-cv-1565

Dated: ___6/28___, 2021        By: _____
                               Jennifer F. Novak
                               Attorney for Plaintiff


                               BASSI, EDLIN, HUIE & BLUM LLP


Dated: ___June 28___, 2021     By: _____
                               Earl L. Hagström
                               Attorney for Defendants


**IT IS SO ORDERED.**          UNITED STATES DISTRICT COURT
                               CENTRAL DISTRICT OF CALIFORNIA


Date: _____, 2021      _____

                               Honorable Fernando L. Aenlle-Rocha